## THE VIRGINIA CITY GAS COMPANY *v.* THE MAYOR AND BOARD OF ALDERMEN OF VIRGINIA CITY; BOTH PARTIES APPEALING.

When the Legislature, in granting a charter to a Gas Company, imposes upon the
company, as one condition of the charter, the furnishing of a certain quantity
of gas to the city, the law does not raise an implied promise on the part of
the city to pay for that which the company are unconditionally required to
furnish.

Per LEWIS, J.—When a Gas Company is required to furnish, free of cost, a certain
quantity of gas *for the first* year, and a certain larger quantity for the *second
year*, and so on to the end of its charter, and the law fixes the time when the
gas *works* shall be finished, but does not fix the day when the furnishing of
gas shall commence, the company shall have a reasonable time, after the gas
works are finished, to lay pipe and prepare for distribution.

The first year for distribution shall commence after the lapse of a reasonable time
from the finishing of the works.

Per JOHNSON, J.—When the company was bound to finish the works on or before
a certain day, and the city was bound to furnish the burners, etc., the first
year would commence when the city was ready to furnish the burners, provided
of course that readiness must be either after the works were actually ready for
the distribution of gas, or after the expiration of the time when the law
required the works to be finished.

If the city neglected to furnish the burners as soon as they were entitled to the
gas, still they would only be entitled to the smaller quantity for one year from
the time they furnished the burners.

Per BEATTY, C. J., dissenting.—The company were bound to be ready to furnish gas from the period when the law required the works to be finished. On that day the "first year" commenced, during which they were bound to furnish the smallest quantity of gas. One year thereafter they were bound to be ready to furnish the increased quantity. If the city failed for six months of the first year to furnish burners, it lost the use of the smaller supply for that period, but this did not postpone the period when the company was bound to commence furnishing the large supply.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD RISING, presiding.

The facts are fully stated in the opinions of the Court.

*Hoover & Cole,* for the City.

The city was entitled to five burners for the first year, say from June 1st, 1864, to June 1st, 1865. For the first six months no gas was used; for the last, just double the quantity per night fixed by law. This was consuming just the right quantity in the year, and the city is not bound for anything.

The law makes it *compulsory* on the company to furnish the gas. If the law compels the company to furnish the gas, how can it be held that it was furnished on an implied contract of the city to pay for it.

*Jonas Seely* and *Will Campbell,* for the Corporation. No brief on file.

Opinion by LEWIS, J., JOHNSON, J., concurring in judgment; BEATTY, C. J., dissenting.

The plaintiff is a corporation organized under an Act of the Legislature of the Territory of Nevada, entitled "An Act to create the Virginia City Gas Company," approved November 28th, A.D. 1861.

The second section of this Act grants to the plaintiff the exclusive privilege of supplying the City of Virginia, its inhabitants and residents, with illuminating gas for the period of ten years from the approval of the Act. The third section authorizes it to erect all necessary buildings, works and machinery, also to make the neces-

sary excavations in the public streets for the purpose of laying gas pipes therein. The law also made it the duty of the plaintiff to complete all the necessary works for the manufacture of such illuminating gas by the first day of June, A.D. 1864, and the sixth and last section of the Act declares that " It shall be compulsory on said company to provide said city, or cities, with sufficient gas to supply five burners for the public streets for the first year ; for the second year sufficient gas to supply ten burners ; and for each year thereafter sufficient gas for fifteen burners, the lamp burners and lamp posts to be provided by the proper authorities."

As to the preparation for furnishing the gas, the plaintiff seems to have complied with the law ; at least there is nothing in the record showing a failure to do so.

This action was instituted on the twelfth day of May, A.D. 1866, for the purpose of recovering the sum of four thousand eighty-three dollars and thirty-three cents, claimed to be due from the City of Virginia for illuminating gas furnished by the plaintiff between the eighteenth day of December, A.D. 1864, and the eleventh day of May, A.D. 1866.

The defendants admit that the gas was furnished by the plaintiff, as alleged in its complaint, but as a defense it is claimed the law makes it the duty of the plaintiff to furnish such gas free of charge ; that no more was furnished than the law made it its duty to furnish, and hence that it is not entitled to recover. The Judge below found, as matter of fact, that from the eighteenth day of December, A.D. 1864, up to the eleventh day of May, A.D. 1866, the plaintiff furnished the City of Virginia two hundred and seventy-seven thousand two hundred feet of gas, which was reasonably worth the sum of four thousand one hundred and fifty-eight dollars ; that during the first year, that is, from the eighteenth day of December, A.D. 1864, to the eighteenth day of December, A.D. 1865, the plaintiff furnished the City two hundred and one thousand six hundred feet, which was one hundred thousand and eight hundred feet in excess of what the law required the plaintiff to furnish ; that this excess was reasonably worth the sum of one thousand five hundred and twelve dollars, for which judgment was given against the defendant. The Court also held that the plaintiff was not·entitled to recover

any compensation for the amount of gas which the law made it its duty to furnish to the city.

Both parties appeal from the judgment, the plaintiff claiming that it should have had judgment for the value of all the gas furnished to the City; whilst counsel for defendant insists that only the amount required by law has been furnished to the City, which, it is urged, the law makes it the duty of plaintiff to furnish free of charge. Whether such be the requirement of the law is the question now to be determined. Unless we can imply a promise on the part of defendant, founded upon sufficient consideration, to pay for the gas furnished to it, there can be no pretense on the part of the plaintiff to a right of recovery, because it seems to be conceded that no express contract has ever been entered into between the parties. Can such contract be created by implication? Clearly not. It will be observed that Sec. 6 of the Act under which the plaintiff was organized makes it compulsory upon it to furnish the City of Virginia with a certain quantity of gas during the entire period of its franchise. Nothing is said in the Act about payment for the gas so furnished.. That in granting franchises it is perfectly proper and within the power of the Legislature to impose duties upon those to whom they are granted, and to attach conditions to such privileges, is undoubted. As in this case it was doubtless within the power of the Legislature to make it the duty of the plaintiff to furnish the City of Virginia with a certain quantity of gas, as a condition upon which it should enjoy its franchise, and in our opinion such is the construction to be placed upon the Act under consideration.

A contract is defined to be an agreement of two or more persons upon sufficient consideration to do or not to do a particular thing. The existence of such agreement is either established by the proof of an express engagement between the respective parties, or by circumstances from which the law will presume a promise or agreement. Hence the distinction between implied contracts and express contracts, which lies not in the nature of the undertaking, but only in the mode of proof. No express promise by the defendant to pay for the gas furnished to them is proven in this case, but it is claimed the law will imply such promise from the acceptance of the

gas by them.   Had not the law made it compulsory upon the plaintiff to supply the city with gas, a promise to pay a fair consideration for it would doubtless be implied from the circumstances presented in this case.   But the Act of the Legislature has destroyed the possibility of such implication.   By making it the absolute, unconditional duty of the plaintiff to furnish the defendant with a certain amount of illuminating gas, a promise on the part of the defendant to pay the plaintiff for performing such duty imposed upon it by the Legislature could not properly be implied.   The plaintiff was not induced to furnish the gas to the city of Virginia by any promise or act on the part of the defendant, but by the mandate of the Legislature, which is absolute and unconditional.   The contract, if it may be so called, is between the plaintiff and the State, by which, in consideration of the privileges granted by the Legislature, it is made the duty of the plaintiff to furnish the city with a certain amount of gas.   The city of Virginia was not a party in any way to that contract though it was beneficially interested in it.   It is like a contract between two individuals for the benefit of a third.   Thus A, in consideration for some privilege or profit derived from B, agrees to do some act for the benefit of C, who is not a party to the transaction.   Though C may acquire advantage or profit from such contract, it will hardly be claimed that he would be holden upon an implied promise to pay a consideration for the profit so acquired by him.   In such case the act of A would be induced by his contract with B; hence a promise by C to pay for any advantages he might acquire from it could not very well be implied.  Such is certainly this case.   The State grants to the plaintiff valuable privileges, and in the grant it is made compulsory upon it to do certain things which are for the benefit of the city of Virginia.   The natural presumption is that the Legislature imposed that duty on the plaintiff in consideration for the franchise granted to it.

But it is urged that the intention of the Legislature was simply to require the plaintiff to furnish the city with a certain quantity of illuminating gas provided the city paid for it ; or rather, that it should give the city the same privileges given to individuals generally.   If that were the object of the Legislature it succeeded unusually well in concealing it from the reader of the Act.   The language of the

law makes it compulsory upon the plaintiff to furnish a certain amount of gas to the city, and that absolutely and not upon any condition. There is no proviso that none shall be furnished if the city does not pay for it. If payment by the city was contemplated, the Legislature would doubtless have left it within the power of the plaintiff to refuse furnishing the gas, if the city refused to pay for it. Instead of that, however, it is made compulsory on the plaintiff absolutely to furnish it for the period of ten years.

The duty imposed upon the plaintiff is absolute, and there is nothing in the Act which will justify this Court in making the act to be done by it dependent upon a condition. If the construction placed upon the sixth section of the Act by counsel for plaintiff be correct, it accomplishes nothing whatever; for it is to be presumed the plaintiff would, if profitable to itself, furnish the defendant with whatever gas it might need, without any legislative Act compelling it to do so. And if payment by the city were a condition upon which it is to be furnished, then it is clear the plaintiff could impose upon the city an exorbitant charge, and if not paid, could refuse to furnish the gas. Thus it would, after all, be placed in the power of the plaintiff to furnish the city with gas or not as it might choose, and so the sixth section of the Act in question would give the city of Virginia no advantage whatever, and would practically amount to nothing. Unquestionably the incorporation of section six into the Act was for some beneficial object; but if the construction of counsel for the plaintiff be accepted, we must conclude either that the Legislature had no object whatever in adopting that section, or that it totally failed in making it known. It is the duty of Courts, if possible, to place upon the Acts of the Legislature such construction as will give them beneficial and practical effect, rather than to nullify or make them of no practical utility by an unnatural interpretation of the language. We conclude it was the object of the Legislature to compel the plaintiff to supply the quantity of gas mentioned in the Act to the city of Virginia, free of charge ; and the gas having been furnished to the defendant in compliance with a duty imposed by the Legislature, on promise by the defendant to pay for any advantage it might have acquired by the performance of such duty can be implied, nor indeed would the per-

formance of such duty be sufficient to support even an express promise by the city.

The next question to be determined is whether the plaintiff furnished the city with any quantity of gas in excess of that which the law made it incumbent on it to furnish. If so, it is entitled to recover from the defendant its fair value. The Judge below finds that over one hundred thousand feet were so furnished, and that such excess was reasonably worth the sum of fifteen hundred and twelve dollars. In arriving at this conclusion the Judge assumed that the first year, (during which time the plaintiff was required to furnish gas sufficient for five burners) commenced on the eighteenth day of December, A.D. 1864. That was probably the time when the plaintiff began to supply the gas to the city. Though the works for the manufacture of the gas are required to be finished by the first day of June, A.D. 1864, yet no exact day is fixed when the gas should be furnished to the city. It is evident all the works necessary for manufacturing it might be completed by the first day of June, whilst by reason of the pipes not being laid through the city, it could not be supplied for some time afterwards.

The laying of the pipes through the city cannot be considered a part of the *works* for the *manufacture* of gas. Hence, after the first of June, when the works were required to be completed, the plaintiff had a reasonable period of time within which to lay the pipes necessary to supply the city. When an act is required to be done, and no time is fixed, the law requires it to be done within a reasonable time, all the circumstances being considered. From the first of June to the eighteenth of December may not have been unreasonable time to allow the plaintiff to lay its necessary pipes.

On the eighteenth day of December, A.D. 1864, then the first year commenced. During that year the law only required the plaintiff to supply five burners for the city, whilst the Court finds that it furnished ten. So double the quantity which the law made it the duty of the plaintiff to supply was furnished during the first year, and the Court below finds the excess thus furnished was reasonably worth the sum of fifteen hundred and twelve dollars.

The judgment being in accordance with the findings, must be affirmed. Costs here must be equally divided between the parties.

Virginia City Gas Co. *v.* Mayor and Board of Aldermen of Virginia City.

By JOHNSON, J.

I think it apparent, upon a consideration of the Legislative Acts under which plaintiff claims its charter privileges, that it is compelled to furnish Virginia City with illuminating gas *free of charge*, to the extent, for the time, and for the uses specified in section six of the Act referred to. The *privileges* accorded to this company, of supplying Virginia City and its inhabitants with illuminating gas, are contained in section two; whereas section six makes it compulsory on the company to *provide* the city with sufficient gas for use on the public streets; for the first year to supply five, the second year ten, and each succeeding year thereafter, during the existence of the charter, for fifteen burners. The same section requires " the corporate authorities to *provide* the lamps, burners, and lamp posts." The learned counsel for plaintiff maintains " that the aforesaid section only renders it compulsory on the company to furnish the gas to the city, but in no degree exempts the city from an implied obligation to pay the company for it." I interpret the law differently, and propose briefly to consider some reasons which determine my judgment on this controverted point.

In the first place we observe the Act does not, in express words, declare that the company shall *provide* gas for the public use *without pay*, nor that the city shall in any degree be supplied with gas *free of charge*. Hence, the exemption claimed by the corporate authorities of Virginia City rests solely on an implied agreement of the original contracting parties—the Legislature granting the franchise and the beneficiaries named in the grant; and therefore we must look to the entire Act and the circumstances under which it was passed to ascertain the probable intention of these parties in this regard. We have seen that the Act requires the company " to *provide* gas," and the city authorities " to *provide* lamps, burners, and lamp posts." None will dispute but that the words " provide," in connection with the city, is but another mode of expressing that " the city authorities must furnish lamps, etc., at the expense of the city." If such is the meaning of the words in the one instance, can any plausible pretext even be found for using the same words in a contrary and opposing sense in respect to the thing compelled

of the company ?   I think not, and the only rational conclusion is, that when the Act declares that the company shall *provide* a given quantity of gas, it shall-be at the expense of the company and not of the city.

The right of the city to exact this service, and the corresponding duty of the company to perform it, depend on one condition only —that the Gas Company shall not be burdened with the cost of supplying either lamps, burners, or lamp posts, and the legislative reservation in favor of the city is coupled with the condition that the expenses of these are to be borne by the city.   " The one thing being expressed excludes all others."   When the law has in effect declared that the city shall pay certain specific items of expense necessary to secure to the public the benefit of lighted streets, it clearly excludes the presumption that it shall furthermore be held liable to pay for the gas *provided* by the company.

Again : if it was the intention of the parties to this compact that the company should be compelled to furnish the city with gas, on the further condition that the city should pay for it, why is any quantity specified, or a limit fixed to this supply—at least, to so inconsiderable an amount—and especially, why is this limit enlarged at stated periods so that ultimately the quantity to be furnished is increased to three-fold that of the first year ?   It occurs to me that the only theory upon which the full extent of plaintiff's claim can be conceded and made consistent with this feature of the Act is, that the Gas Company might not be compelled to provide a supply for the city beyond the productive capacity of its works, a theory scarcely reconcilable with our impressions of such establishments in populous cities.   A more probable explanation of the reasons why these limitations were introduced in the body of the Act accords with our construction of it, and may be summed up in about this way.   Here was a valuable franchise within the granting powers of the Legislature.   It is bestowed on this company and made exclusive, so that the grantees cannot be molested by any rival enterprise. The city and its people for ten years are compelled to rely on this company for their supplies of illuminating gas ; the public streets are to be disturbed in the process of laying gas pipes ; and as compensating in some degree for the rights and privileges acquired by

the company, the Legislature compels it to furnish the city on which it has imposed this monopoly, illuminating gas for public use, but with the understanding that it is to be supplied *without charge*, the allowance is restricted within certain limits; and also considering the obstacles which such enterprises ordinarily have to encounter in their beginning, the quantity for the first year is limited to the very small amount specified in the Act. But when the expected advance of the city in population and improvement, by the natural course of things, has enhanced the demand for its use and consequently the resulting profits, the *bonus* is advanced with the enlarged facilities and resources of the company.

But the learned counsel for the plaintiff seems to ascribe some importance to the fact that at the same session of the Legislature two other franchises for similar purposes in other cities of the Territory were granted, in each of which there was contained a special clause, that a given quantity of gas was to be supplied to the cities named "*free of cost*," and concludes from this circumstance that if the Legislature meant to compel the plaintiff to furnish gas to Virginia City *free of cost*, it would have been expressly declared in this, as in the other charters. Because the Legislature has adopted more formal and precise language in the later Acts, perhaps *ex industria*, to silence all doubt, we are not to conclude that the omission of these words in the first mentioned Act establishes a contrary intention; but the question at issue must be determined the same as if no other franchise of this character had been granted by the Legislature. If, however, the position of counsel for plaintiff be correct, it evidences this remarkable fact, that the most valuable charter, the one granted plaintiff, is made in all material respects *unconditional;* whilst the others, of infinitely less value, are cumbered and burthened with exactions—an inconsistency and favoritism rarely discernable even in a Territorial grant of a private franchise.

The matters embraced in the second and remaining qustion discussed at the hearing of this appeal involve the ascertainment of but a single fact, as to when "the first year" began, in the sense and meaning the expression is used in the Act; because such date, when fixed, regulates the measure of all subsequent supplies of gas

22

.which the city can claim for public uses, free of cost; and from thence must be determined in what degree the quantity furnished the city has exceeded the amount it was lawfully entitled to without charge.

Here it may be stated that this is an appeal from the judgment only, and consequently none of the testimony adduced on the trial below is before us ; and as the District Court has restricted its findings to but a portion of the facts which now properly should be made to appear, we are uninstructed on some questions which in my judgment were pertinent matters of inquiry ; and indeed from the record as it comes to us, it is somewhat difficult to arrive at a satisfactory conclusion concerning this feature of the case. For instance, it would seem consistent with the issues made by the pleadings, to have determined when the works of the Gas Company were completed, when supply pipes were laid connecting the gas works proper with that portion of the city to be supplied, and finally when the city authorities were in a condition, with lamp posts, lamps and burners, to have the streets of the city lighted with gas. Upon most if not all of these points, it is reasonable to conclude that proofs were before the Court below ; but none of these collateral facts are distinctly passed upon by the findings, and in some respects it is left to conjecture the basis upon which the Court below founded its judgment. In this condition of the case, let us for a moment recur to the statutes already cited.

By the terms of Sec. 2 the charter of · plaintiff runs ten years from the 28th of November, 1861—the date of its approval. Sec. 4 requires the grantees named in the Act to organize under the general incorporation laws of the Territory within *three months*. By amendments to Sec. 5 of the original Act (see Acts 1862, pp. 15, 16) the company is required " to commence the completion of the works necessary for the manufacture or production of gas" by the *twelfth of June*, 1863, and " to complete the same *on or before the first day of June*, 1864." Sec. 6, as already shown, specifies the quantity of gas to be supplied for public use within a stated period, commencing with " the first year"; but nowhere in the Act is a day or an event stated from whence shall be computed the commencement of such " first year." Wherefore we must determ-

ine the intended meaning of the phrase so used in this connec-
tion.   Plaintiff insists that the "first year" spoken of manifestly
refers to the year next succeeding the completion of the gas works;
and assuming the first of June, 1864, to be the precise day on
which the event occurred, by a ready process of reasoning establish
their theory as to the point in question.   To this proposition my
reply is this : In the first place, it clearly appears that the date of
June 1st, 1864, was *fixed* for a single purpose, and its use cannot
be extended beyond that of marking the extreme limit of time given
for the completion of the manufacturing works of the company.   It
does not even fix a time, except in a relative sense, as the language
of the section is " *on* or *before* " the first of June, 1864 ; so that
the event of completing such works may have happened on *any*
day between the passage of the amendatory Act and the limit
therein specified.   As to the other ground assumed by counsel, that
June 1st, 1864, was the true date of the completion of these works,
it is sufficient to suggest that neither by the pleadings nor findings
of the District Court is this fact shown, and for aught this Court
can know, the works were completed prior to that day.   However,
in the light which I regard this particular point of inquiry, it is
quite immaterial whether such was a fact or not.   But it is said that
inasmuch as the first of June, 1864, is the only date fixed by the
Act which with reasonable propriety can be considered for such
purpose, we should therefore accept it as the commencement of
the " *first* year," as otherwise there cannot be any date ascertained
for such purpose.   As already observed, this date is used in a rela-
tive sense only, is fixed for but a single purpose, and certainly it
has but a very remote connection with the question of *time* involved
in the supply of gas to the city.   The absence of a date fixed by
express words may be no serious impediment in determining the
commencement of such " first year," if some event contemplated by
the Act can be made to serve a similar purpose, more especially
when, as in this case, the rights of the city are made dependent
absolutely on conditions to be performed by the corporate authori-
ties, and the compliance with these conditions not fixed or limited
within any given space of time.   The condition upon which the
city was to derive its gratuitous supply of illuminating gas, com-

pelled it to provide necessary lamps, etc.   Whenever these works of the company were completed, and whether completed or not, after the day limited for such purpose, the rights of the city attached, and the obligation of the company to furnish the stated supply of gas became operative; *provided,* the city was ready with its lamps, lamp posts, and burners.   But until this needful provision had been made by the corporate authorities, neither could the public be benefited by lighted streets, nor the gas company be held amenable in any form of proceeding for withholding such bounty; and this condition of things would exist so long as the city neglected to make provision in the respects mentioned.   The loss and inconvenience to the city would be measured by the delay and neglect of its own agents.   The advantages accruing to the company would also be proportioned to the extent of such delay, for we remember this act limits the duration of the charter to ten years following the approval of it; and as the supply of gas which the city is entitled to after the first two years must equal the demands of fifteen burners as against five burners during the first year, it follows that the period of the greater supply would be diminished in equal degree as to *time,* and threefold as to quantity—the final result depending on the time allowed to elapse before the proper authorities had provided necessary lamps, lamp posts, and burners.   It seems to me, therefore, that under the circumstances it is most reasonable to conclude that the Act contemplates " the first year " to be reckoned from the time when the city was prepared to accept the gas from the company for the purposes indicated.   The happening of the event, it is true, depended on many contingencies which were incapable of being estimated at the time the Act was passed; but in the progress of events the ascertainment of this fact was not only rendered possible, but indeed as readily determined as any other question which might arise in giving construction to the law.

The facts found show that the company commenced to supply the city with gas in December, 1864; and as no claim is made against the company for not furnishing a sufficient supply for public use prior to this date, we may infer that this was the earliest time the city was conditioned to accept it, and therefore the supply for five

burners would embrace the twelve months succeeding, to wit: until December, 1865, when the increased supply should begin, and would terminate on the corresponding day of the following December, 1866, after which, and until the expiration of the charter, the *maximum* quantity specified in the Act became the standard of future estimates between the parties in such particular.   Guided by the principles herein laid down, it follows, therefore, that the gas consumed for the public use, in excess of a sufficient quantity to supply five burners, between the respective dates in December, 1864, and December, 1865, the city is liable for; and as the findings of fact and judgment of the Court below (except a trivial matter of computation) are in accordance with the principles enunciated in this opinion, I concur in the conclusions attained on both of the points discussed in the opinion of Mr. Justice Lewis, and concur in his affirmance of the judgment.

Dissenting opinion of BEATTY, C. J.

I fully concur with my associates so far as the first point in this case is concerned.   I think there can be no reasonable doubt that the Gas Company was bound to furnish the city with a certain amount of gas, as specified in the Act, free of cost.

As to the other branch of the case, I differ entirely from the views expressed by my associates.

The second section of the Act provides that the corporation shall exist for the period of ten years from the *approval* of the Act of incorporation.

The third section confers certain rights and powers on the corporation, such as erecting buildings, works for the manufacture of gas, the right to excavate the streets for laying pipe, etc.

The fourth section prescribes the time within which the company shall organize.   The fifth section in the original Act reads as follows:

" The said company shall, within the period of six months from and after the approval of this Act, commence the construction of the works necessary for the manufacture or production of illuminating gas, and shall, within twenty months from and after the approval of this Act, complete the same."

Which was afterwards amended so as to read as follows :

" The said company shall, within the period of six months from and after the approval of this Act, commence the construction of the works necessary for the manufacture or production of illumin-' ating gas, and shall complete the same on or before the first day of June, A.D. 1864."

The sixth and last section reads as follows :

" It shall be compulsory on said company to provide said city, or cities, with sufficient gas to supply five (5) burners for the public streets for the first year ; for the second year sufficient gas to supply ten (10) burners ; and for each year thereafter sufficient gas for fifteen (15) burners ; the lamps, burners, and lamp posts to be provided by the proper authorities."

Although the fifth section of the original and amended Act merely requires the " works necessary for the manufacture or production of illuminating gas " to be completed within a given time, and say nothing about the placing of the pipes for its distribution, it is evident to my mind that the Legislature intended that the company should be ready for distribution of the gas when the works were completed. It can hardly be doubted that any company, engaged in erecting costly gas works, would at the same time lay down pipes through some of the principal streets of the city to be supplied, so that as soon as the works were done the supplying of gas might be commenced. It appears to me that it is sufficiently plain that the Legislature intended to require the company to be ready to furnish gas to the city by the first day of June, 1864.

The sixth section requires the Gas Company to furnish gas enough for five burners for the *first year, ten burners for the second*, and fifteen for each year thereafter. The question is : What is meant by the *first year?* The charter is granted for ten years after the approval of the Act of incorporation, which was in November, 1861 ; but the gas works are not required to be done until June 1st, 1864.. Now, the first year could not mean the first year after incorporation, because there would be no works ready for manufacturing for more than one year, if the company took the time allowed to complete the works. It appears to me it meant the first year after the works were completed. If this was not the

time intended, then no definite time is fixed by the statute.   It is all left to conjecture and doubt.   According to the views of my associates on this subject, whilst the Legislature has carefully provided when the *gas works* shall be finished, it has wholly failed to fix a time when the citizens shall be given the privilege to receive the benefits of the gas.   Now, the whole object of fixing the time when the works should be finished was doubtless with a view of securing the citizens the benefit of the gas.   I do not think the law is so defectively worded as to have totally failed to attain the end for which it was framed.   Whilst the wording of the law is not quite so explicit as it might have been, the intention is apparent and should be carried out.

There is no necessity of holding that the Gas Company should have a reasonable time *after* the completion of their houses, works, etc., for the laying of pipes.   They had a reasonable time in which to lay the pipes *before* the works were completed.   There was nothing to hinder laying the pipes simultaneously with the building of houses, etc.

If, then, I am correct in holding that the first year, as contemplated by Sec. 6 of the Act, commenced June 1st, 1864, it was the duty of the Gas Company to furnish five burners per night from June 1st, 1864, to June 1st, 1865; from June 1st, 1865, to furnish ten burners for the period of one year.   But by the judgment of the Court below the city is made to pay for five extra burners between the first of June, 1865, and the first of December, 1865, although only ten burners were furnished during that time. This is clearly wrong, if I am correct about the time when the first year commenced.

The judgment is for the value of five extra burners for a period of twelve months, whilst, if I am right, it could have been only for five months and thirteen days—say from December 18th to June 1st, at the most.

But I am by no means satisfied that any judgment was proper against the city.   The company, as I read the law, was bound to be ready to furnish gas, to the extent of five burners, from the first day of June, 1864, but they only began to furnish it on the eighteenth of December, after near half the year was gone.   They

then furnished double the quantity the law required them to furnish.

Now it would seem, in the absence of all testimony explaining the matter, rather more probable that the company furnished this double quantity in the latter part of the year to make up for their shortcomings in the beginning, than that it was furnished with the expectation that the city would pay for it.

If the company was bound to furnish gas from the first of June, and was not ready to furnish until the eighteenth of December, it was liable to the city in damages. The extra five burners furnished afterwards would have been an offset against this liability. But, on the other hand, if the company was ready to furnish the gas on the first of June, and it was not furnished because the city had not procured the lamps, burners, etc., then the company was not in fault, and would not have been liable to make up for the lost time. The findings are so defective that I cannot determine whether judgment should or should not have been given against the city for the value of the extra five burners, from December 18th, 1864, to June 1st, 1865, but feel satisfied that so far as the allowance is made against the city for the period between June 1st, 1865, and December 18th, 1865, it is erroneous.

I therefore think the judgment should be reversed.