PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, aka PETA, a Delaware Non-Profit Corporation; PERFORMING ANIMAL WELFARE SOCIETY, aka PAWS, a California Non-Profit Corporation; JEANNE ROUSH, OTTAVIO GESMUNDO, and PAT DERBY, Appellants, v. BOBBY BEROSINI, LTD., a Nevada Corporation, and BOHUMIL BEROUSEK, aka BOBBY BEROSINI, Individually, Respondents.

No. 21580

April 14, 1995          894 P.2d 337

*Hale, Lane, Peek, Dennison & Howard* and *Robert D. Martin*, Las Vegas, for Appellant Gesmundo.

*Hirschkop & Associates*, Alexandria, Virginia, for Appellants PETA, Roush and Gesmundo.

*Watkiss & Saperstein*, Salt Lake City, Utah, for Appellants PETA and Roush.

*Anderson, Pearl, Hardesty, Lyle, Murphy & Stone*, Reno, for Appellants PAWS and Derby.

*Gewerter & Bohn*, Las Vegas; *Thomas Pitaro*, Las Vegas; *Lemons, Grundy & Eisenberg*, Reno, for Respondents.

*Susan Quig-Terry*, Las Vegas, for Amici Curiae Humane Society of the United States, et. al.

## OPINION

*Per Curiam:*

The above-entitled matter was first docketed in this court in October of 1990. On March 5, 1992, this court scheduled oral argument for April 21, 1992. On April 15, 1992, six days before oral argument, this court filed an executive order by the Governor designating Judge Jack Lehman to sit in place of then-CHIEF JUSTICE JOHN MOWBRAY. On April 21, 1992, oral argument was heard with Judge Lehman participating.

On January 27, 1994, this court issued an opinion in this matter, signed by three justices of this court and Judge Lehman.[1] PETA v. Bobby Berosini, Ltd., 110 Nev. 78, 867 P.2d 1121 (1994). This court reversed a money judgment, following a jury verdict, against appellants for libel and invasion of privacy regarding the videotaping of respondent Berosini striking his performing orangutans with a rod. Respondents have petitioned this court for rehearing. Respondents have also moved this court to disqualify Judge Lehman and to vacate our prior opinion.[2]

The basis for the motion to disqualify Judge Lehman is his association with the Animal Foundation of Nevada (AFN), and its alleged association with appellants. Judge Lehman did not disclose this affiliation to the parties prior to his participation in, or during the pendency of, this matter. Berosini did not learn of Judge Lehman's affiliation with AFN until after our opinion in this matter was issued.

---

[1]Although JUSTICE ROSE participated in oral argument, he voluntarily recused himself and did not participate in the decision.

[2]Although Berosini's motion to disqualify Judge Lehman is arguably untimely pursuant to NRAP 35, we have elected to entertain the motion because, under the unique circumstances of this case, Berosini did not know, and could not reasonably have known, about Judge Lehman's alleged appearance of partiality before Judge Lehman heard argument in this matter. *See generally* Blaisdell v. City of Rochester, 609 A.2d 388, 391 (N.H. 1992); Com. v. Hammer, 494 A.2d 1054, 1058-59 (Pa. 1985); Gulf Maritime Warehouse Co. v. Towers, 858 S.W.2d 556, 562 (Tex. Ct. App. 1993).

In 1993, while this case was under submission, Judge Lehman was a member of the six-person Advisory Board of AFN.[3] AFN's primary activity is running a spay and neuter clinic. AFN's "Statement of Philosophy and Purpose" reads in part:

> The Animal Foundation's only purpose is to educate the public, making them aware of the millions of animals born homeless and unwanted.
>
> Although we recognize a degree of merit in the animal rights movement, we feel working within the needs and sentiments of the community yield far greater participation and progress. Without exception, the pet over-population is the main concern of the Animal Foundation and the Las Vegas community.

In two years, the clinic sterilized over 15,000 dogs and cats. AFN also operates a "low-cost" vaccination clinic and a pet adoption center. AFN visits classrooms to talk to kids about their pets and how to be a good pet owner. AFN further publishes brochures about pet care which it displays in a literature rack in the lobby of the foundation's building. Next to the AFN literature on the rack is a PETA brochure entitled "PeTA Guidelines for the Sale or Give-Away of Your Companion Animal."

AFN also has a five person Board of Trustees. In 1993, one of those trustees was Jamie Greenspun-Gale. Greenspun-Gale was involved in the events leading to this litigation; however, she was not a party or a witness. Nevertheless, testimony at trial indicated that Greenspun-Gale, a Las Vegas Sun columnist, was "very active in animal affairs and animal welfare" and was a member of PETA. Testimony also indicated that, after PETA received the videotape of Berosini striking his orangutans, a PETA employee called Greenspun-Gale to suggest that Greenspun-Gale expose Berosini's actions in the media. Further, there was testimony that Greenspun-Gale had Eileen Price (an active contributor to PETA and PAWS), Pat Derby (the head of PAWS and an appellant in this matter), and Jeanne Roush (PETA's chief investigator and an appellant in this matter) over to her house for dinner prior to an August 1989 meeting of animal rights activists about Berosini. Finally, Greenspun-Gale told the president of the Humane Society that there was no need for the Humane Society to investigate Berosini on animal abuse charges because "everything was under control." AFN also had ties to Linda Levine, originally a defendant in this action. Levine is a member of PETA and has appeared

---

[3]The pleadings are unclear regarding when Judge Lehman joined the Advisory Board, whether he is still on the Advisory Board, and exactly what the Advisory Board does.

on TV on behalf of PETA. Levine is also a member of AFN and has appeared on TV on its behalf.[4]

Therefore, at the time this matter was under consideration, Judge Lehman was a member of the advisory board to a foundation that has utilized a defendant in this action as its representative and which had a fairly active animal rights activist as a trustee. Judge Lehman has filed an affidavit in this court stating that he has only attended nine or ten Advisory Board meetings in the entire time he has been on the board. Judge Lehman did not know, and had never met, Greenspun-Gale until meeting her at one of the Advisory Board meetings in approximately August of 1992. Since then, Judge Lehman believes that he and Greenspun-Gale have both been at meetings together only two or three times. PETA, PAWS, and the instant litigation have never been discussed at these board meetings. Judge Lehman has never seen PETA literature at AFN or engaged in fund raising activities for AFN. Judge Lehman further states that he believes that the goals of AFN and PETA are substantially different. Judge Lehman "[i]n good faith, and all honesty . . . has never thought of a possible conflict with this case because of membership on said Advisory Board." Even in retrospect, Judge Lehman does not think that there was a conflict.

Berosini contends that Judge Lehman should be disqualified as a matter of due process, pursuant to NRS 1.225, and pursuant to the Nevada Code of Judicial Conduct (NCJC). Because we conclude that there is the appearance of impropriety under the NCJC, we do not reach Berosini's other grounds for relief.

As a preliminary matter, we hold that the NCJC is *not* merely a conduct guide to judges, a violation of which is punishable by discipline. The NCJC also provides substantive grounds for judicial disqualification. *See* Ainsworth v. Combined Ins. Co., 105 Nev. 237, 774 P.2d 1003 (1989); Goldman v. Bryan, 104 Nev. 644, 764 P.2d 1296 (1988); *see generally* Cronin v. District Court, 105 Nev. 635, 781 P.2d 1150 (1989); State v. Mack, 26 Nev. 430, 69 P. 862 (1902); *see also* Scott v. U.S., 559 A.2d 745, 749 n.8 (D.C. 1989); Collins v. Dixie Transport, Inc., 543 So. 2d 160, 166 (Miss. 1989).

NCJC Canon 2 provides that "[a] judge shall avoid impropriety and the appearance of impropriety in all of the judge's

---

[4]It is unclear from the pleadings whether Levine's television appearance had anything to do with Berosini.

activities."[5] The Commentary to Canon 2A states, in part, that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." NCJC Section 3E(1) provides, in part, that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ." The Commentary to Section 3E(1) states that "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification."

As the commentary to the NCJC makes clear, the test for whether a judge's impartiality might reasonably be questioned is objective; whether a judge is actually impartial is not material. This conclusion is in accordance with the great weight of authority.[6] For example, in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), the United States Supreme Court examined 28 U.S.C. § 455(a), a federal statute virtually identical to NCJC Section 3E.[7] The Court noted that § 455(a) was designed to promote public confidence in the integrity of the judicial process. Liljeberg, 486 U.S. at 858 n.7. Further, scienter is not an element of a violation of § 455(a):

> "The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid

---

[5]The Code of Judicial Conduct consists of broad statements called Canons, specific rules set forth in Sections under each Canon, and Commentary. The Canons and the Sections are authoritative. The Commentary provides guidance to the purpose and meaning of the Canons and Rules by explanation and example; it is not a statement of additional rules. *See* Preamble to NCJC.

[6]*See e.g.,* Flier v. Superior Court (Perkins), 28 Cal. Rptr.2d 383, 386 (Ct. App. 1994); Scott v. United States, 559 A.2d 745, 748-49 (D.C. 1989); Tyson v. State, 622 N.E.2d 457, 459 (Ind. 1993); State v. Lovelady, 691 S.W.2d 364, 365 (Mo. Ct. App. 1985); Blaisdell v. City of Rochester, 609 A.2d 388, 391 (N.H. 1992).

[7]28 U.S.C. § 455(a) provides in relevant part that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

the appearance of partiality. Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge."

*Id.* at 860-61 (quoting circuit court's decision as reported in Health Services Acquisition Corp. v. Liljeberg, 796 F.2d 796, 802 (5th Cir. 1986) (citation omitted).

Another federal court has elaborated:

"Under [§ 455(a)] a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality. . . .

. . . The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.

United States v. Cooley, 1 F.3d 985, 992-993 (10th Cir. 1993) (citations omitted). The objective standard not only ignores the judge's personal view of his own impartiality, but it also ignores the litigants' necessarily partisan views. Flier v. Superior Court (Perkins), 28 Cal. Rptr.2d 383, 386 (Ct. App. 1994). Further, disqualification must be factually necessary and not based on mere speculation. *Cooley,* 1 F.3d at 993.

A judge, however, has a duty to preside in the absence of some statute, rule of court, ethical standard, or other compelling reason. Goldman v. Bryan, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988). When a judge determines that he may not voluntarily disqualify himself, his decision should be given "substantial weight" and should not be overturned absent a clear abuse of discretion. *Id.* Under these circumstances, a judge is presumed not to be biased, and the burden is on the party asserting the challenge to establish sufficient factual grounds warranting disqualification. *Id.*

Berosini therefore has the burden of establishing sufficient factual grounds which overcome the "substantial weight" given to Judge Lehman's decision not to voluntarily disqualify himself. *Id.* Whether Judge Lehman's impartiality can reasonably be questioned under an objective standard, however, is a question of law and this court will exercise its independent judgment of the undisputed facts. *See* Flier v. Superior Court (Perkins), 28 Cal. Rptr.2d 383, 386 (Ct. App. 1994); State v. Rochelt, 477 N.W.2d

659, 661 (Wis. Ct. App. 1991). Thus, the question before this court is whether a reasonable person, knowing all the facts, would harbor reasonable doubts about Judge Lehman's impartiality.

Preliminarily, we want to make it clear that we do not believe that Judge Lehman was subjectively biased. We are familiar with Judge Lehman's integrity and character, and we know that Judge Lehman would not have participated in this matter if he was in any way actually biased against Berosini or partial toward appellants. Further, we do not believe that Judge Lehman intentionally concealed his affiliation with AFN. Rather, we believe, as Judge Lehman has stated in his affidavit, that it never occurred to him that his membership on AFN's Advisory Board might present the appearance of partiality.

Nonetheless, we conclude that we must grant the motion to disqualify Judge Lehman to avoid even the appearance of impropriety and to promote public confidence in the integrity of the judicial process. We conclude that a reasonable person, knowing all the facts, would harbor reasonable doubts about Judge Lehman's impartiality. Judge Lehman's role as an Advisor to an animal foundation, even one solely devoted to sterilizing animals and pet care, would cause a reasonable person to wonder whether Judge Lehman could be completely neutral and detached when deciding whether appellants' actions were tortious. Further, a trustee of the foundation was active in the animal rights movement and an occasional spokeswoman for the foundation was an active PETA member and a defendant in this action. Judge Lehman's association with these players could cause a reasonable person to question his impartiality.

Having concluded that we must grant the motion to disqualify Judge Lehman, we further conclude that we must grant rehearing and withdraw our prior opinion in this matter. Although Judge Lehman's vote in this case could be considered mere surplusage because three other justices of this court signed the opinion, we conclude that the role that collegiality plays in appellate decisions mandates full reconsideration of this matter. *See* Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 829-31, 831-33 (1986) (Brennan, J., concurring, and Blackmun and Marshall, JJ., concurring). Further, it would be inconsistent with the goals of the NCJC to require certain standards of behavior from the judiciary in the interest of avoiding the appearance of impropriety but then to allow a judge's ruling to stand when those standards have been violated. *See* Blaisdell v. City of Rochester, 609 A.2d 388, 391 (N.H. 1992).

Accordingly, we grant respondent's petition for rehearing and we grant respondent's motion to disqualify Judge Lehman. We withdraw PETA v. Bobby Berosini, Ltd., 110 Nev. 78, 867 P.2d 1121 (1994). On rehearing, this matter will be submitted on the record, the pleadings, and the tape recording of the oral argument conducted by this court on April 21, 1992. Justice Miriam Shearing will participate on rehearing. Our decision to grant rehearing is solely as a result of our decision to disqualify Judge Lehman. Respondents' other contentions in their petition for rehearing regarding our previous opinion in this matter will be considered on rehearing.[8]

---

[8]THE HONORABLE MIRIAM SHEARING, Justice, and THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.