GEORGE F. WILFON, Appellant, v. CYRIL
HAMPEL 1985 TRUST, Respondent.

No. 19371

November 2, 1989                                    781 P.2d 769

*Richard F. Cornell,* Reno for Appellant.

*Anderson* and *Pearl* and *Terrill R. Dory,* Reno for Respondent.

# OPINION

*Per Curiam:*

This is a prescriptive easement case. The trial court recognized respondent Cyril Hampel's right of prescription over two portions of George Wilfon's land. Hampel operates a trailer park adjacent to the Wilfon property and claimed the right to use as a driveway a small horseshoe-shaped portion of a corner of the Wilfon property. Hampel also claimed a prescriptive right to use a dirt road that crossed Wilfon's property. With respect to these portions of Wilfon's property, there is evidence that the trailer park tenants crossed over the corner of Wilfon's property for a number of years and that the mentioned dirt road was used to service a propane tank and a billboard on the Hampel property.

Wilfon was an absentee owner and did not give express permission to Hampel, the trailer park tenants or anyone else to cross over or use the road that traversed his property. He did, however, express a general intention to be neighborly and to allow Hampel's predecessors and others to enter upon his property. Wilfon did make mention of the fact that he had plans eventually to move onto the property and at that time to deny access and use of the road to others. Wilfon did, in fact, carry out his intentions to withdraw permission to cross over his property by the installation in April, 1988 of a chain link perimeter fence on his property. This act cut off his property from any use by the public or by Hampel.

Hampel reacted by tearing down the fence. Wilfon put it up again. Hampel sued for declaratory judgment declaring a prescriptive easement over the land and seeking an injunction against Wilfon's fencing his property where the fencing interfered with Hampel's traveling through Wilfon's property. The principal issue is whether the use of Wilfon's property by Hampel and his predecessors was hostile and adverse for a period of five years.

"The elements of an easement by prescription are five years' adverse, continuous, open and peaceable use." Stix v. La Rue, 78 Nev. 9, 11, 368 P.2d 167, 168 (1962); *see also* Anderson v. Felten, 96 Nev. 537, 612 P.2d 216 (1980). The standard of proof in establishing a prescriptive easement is clear and convincing evidence. Allingham v. Nelson, 627 P.2d 1179 (Kan.App. 1981); Gerberding v. Schnakenberg, 343 N.W.2d 62 (Neb. 1984); Garmond v. Kinney, 579 P.2d 178 (N.M. 1978).

Wilfon asserts that Hampel failed to prove by clear and convincing evidence that Hampel's use of the described roads was

hostile or adverse to Wilfon for the required five-year period. We agree.

First, with regard to the area of encroachment represented by Hampel's paving over of a portion of a corner of the Wilfon property, the trial court noted that "the paving of the driving area in question and as testified to was recent in nature." The trial court also noted that "the evidence is uncertain with respect to how far this road actually encroached prior to the paving." From this it must be concluded that although for a period of years people might have been crossing over a corner of the Wilfon property, the paving of the road by Hampel was the first hostile assertion by Hampel of a definitive right-of-way over Wilfon property.

From the time that Hampel paved a portion of the Wilfon property in October of 1986, adversity may be inferred from the circumstances of the use. Chollar-Potosi Mining Co. v. Kennedy & Keating, 3 Nev. 361 (1867). In *Chollar-Potosi,* the prescriptive easement claimant established a roadway over the owner's property, as did Hampel in 1986 when he put pavement on Wilfon's property. (In *Chollar-Potosi,* 3 Nev. at 372, it appears that the "proof shows clearly that the Potosi Company surveyed and graded this road for travel in 1861, and since then have been continuously using it as a road.") *Chollar-Potosi* stands for the proposition that, where a prescriptive easement claimant creates or establishes a roadway on another's property, a hostile or adverse use may be inferred from the use of another's property in this manner. Thus Hampel's adverse claim began at the time of the paving, October 1986. There is no evidence of any hostile claim before this time. It does not appear that any adverse claim of any right to cross over Wilfon's property was ever made by anyone prior to the mentioned paving activity by Hampel in 1986. Courts are reluctant to find prescriptive easements over open and unclosed land since such use tends to be permissive in nature and does not imply a hostile or adverse use. Burdess v. Arkansas Power & Light Co., 597 S.W.2d 828, 830 (Ark.App. 1980); Adams v. Skagit County, 566 P.2d 982, 984 (Wash.App. 1977). The mere fact that Hampel and his predecessors crossed over a corner of Wilfon's property does not show any hostile claim of right on Hampel's part.

Hampel's adverse claim to the paved road area necessarily begins in October of 1986. The statutory requirement of five years' adverse use cannot be present with respect to the paved portion of the Wilfon property; so the prescriptive easement in this area must be denied.

⬛⬛⬛

, With regard to the other prescriptive easement granted in this case over a road across the Wilfon property known as Cavanagh Road, we likewise are hard-pressed to discover evidence to support an adverse claim by Hampel for the required five years. According to witness Haskins, a former owner of the Hampel property, the road appears on his plat plan, and he understood it to be a public road.[1] There is nothing in the record to indicate other than that Cavanagh Road was an established road created on the property by Wilfon's predecessors. Where a road is established by the landowner, there arises a presumption that its use by others is with the permission of the landowner. *See* Jackson v. Hicks, 95 Nev. 826, 604 P.2d 105 (1979); Turrillas v. Quilici, 72 Nev. 289, 303 P.2d 1002 (1956); Howard v. Wright, 38 Nev. 25, 143 P. 1184 (1914).[2]

⬛⬛

The mere fact that Cavanagh Road was used to service a propane tank and a billboard for a long period of time does not justify the creation of a prescriptive easement. A case in point is that of Turrillas v. Quilici, 72 Nev. 289, 303 P.2d 1002 (1956), in which the prescriptive easement claimants show extended use by the public "for more than 30 years." To this the court responded by citing an earlier Nevada case.

> As stated in Howard v. Wright, 38 Nev. 25, 143 P. 1184, 1187, "[The] mere use of a passage over another's land for a long time with his knowledge is not necessarily an adverse use. The circumstances may be such as to authorize an inference that the use is adverse but they may also be such as to intimate that the use was by permission."

*Turrillas,* 72 Nev. at 291, 303 P.2d at 1003.

The court then continued in language most apropos to the case before us:

> Where a roadway is established or maintained by a land-owner for his own use, the fact that his neighbor also makes

---

[1] When an owner of a dominant estate uses a right-of-way in the belief that it is a public road, this does not establish a prescriptive easement. Cardenas v. Kurpjuweit, 753 P.2d 290, 294 (Idaho App. 1988).

[2] Hampel claims, citing Chollar-Potosi Mining Co. v. Kennedy & Keating, 3 Nev. 361 (1867), that "adversity may be inferred from the circumstances of the use." What Hampel has overlooked in *Chollar-Potosi* is that the predecessor of the Chollar-Potosi Mining Company, the party claiming to have the prescriptive right, had actually built the road through the property in question. *Chollar-Potosi* does not stand for the proposition, as claimed by Hampel, that the mere use of another's road without asking permission constitutes adverse use.

use of it, under the circumstances which in no way interfere with use by the landowner himself, does not create a presumption of adverseness. *The presumption is that the neighbor's use is not adverse but is permissive and the result of neighborly accommodation on the part of the landowner.*

*Turrillas,* 72 Nev. at 291-92, 303 P.2d at 1003 (our emphasis).

In the case before us it appears that Cavanagh Road had been established and maintained by owners of the Wilfon property and that there is a presumption that until Hampel tore down Wilfon's fence the road was permissively used. No prescriptive rights could be established until after the hostile act of Hampel's tearing down Wilfon's fence, insisting on the right to cross Wilfon's property. Such hostile claim has not, as in the case of the other claimed prescriptive right, persisted over the required five-year period.

Any evidence of adversity in this case is insubstantial at best. Certainly the presumption of permissiveness as stated in *Turrillas* has not been overcome, and it is not possible in this case to conclude that there is clear and convincing evidence of the adversity element of either of Hampel's claims. We, therefore, reverse the judgment of the trial court and dissolve the injunction.