JOHN E. MICHELSEN and ANN J. MICHELSEN, Husband and Wife, JOHN E. MICHELSEN, Trustee of JOHN E. MICHELSEN FAMILY TRUST AGREEMENT, Appellants, v. JAMES A. HARVEY, Trustee of HARVEY FAMILY TRUST, DATED 9/26/80, SAMUEL S. HARVEY, ELIZABETH HARVEY BLAIKIE and JOHN F. BLAIKIE, Tenants in Common, Respondents.

No. 21741

December 6, 1991                    822 P.2d 660

[Rehearing denied May 13, 1992]

*Thomas J. Hall,* Reno; *Hibbs, Roberts, Lemons, Grundy & Eisenberg,* Reno, for Appellants.

---

*F. Thomas Eck*, Carson City, for Respondents.

## OPINION

*Per Curiam:*

This case involves a property dispute between appellants John and Ann Michelsen ("Michelsens") and respondents James Harvey, Samuel Harvey, Elizabeth Harvey Blaikie, and John Blaikie ("Harveys"). The Michelsens and the Harveys each own a parcel of land bordering Lake Tahoe. These parcels are adjacent to each other and were once part of a large tract of land owned by

Gertrude Church ("Church"), the Harveys' grandmother. A wide, sandy beach area is located directly lakeward of the parcel now owned by the Michelsens. Ownership of this beach area is disputed, and both parties claim ownership in fee simple absolute based on the deed in which Church first conveyed the parcel of land now owned by the Michelsens.

Before Church acquired her Lake Tahoe property, a United States Government Survey of the land was performed. This survey was directed by the United States Surveyor General for the District of Nevada and was completed in February 1861 and updated in 1875. To perform the survey, the government survey-ors created a meander line along the edge of Lake Tahoe. A meander line is generally a short distance landward from the water's edge (not the actual high tide mark) and is used to determine the amount and price of land to be sold by the federal government. In other words, a meander line is a series of short, straight lines used to approximate the water's curved edge, so that the government can determine how much waterside land it owns and how much it should charge for the land.[1]

The original deed to the Michelsens' parcel was conveyed by Church to W. H. Moffat in 1930; it includes a metes and bounds description and uses the Lake Tahoe meander line as one of its boundaries. Specifically, the deed reads as follows:

> Beginning at the meander corner common to Section 9 and 10, T. 13 N., R. 18 E., thence, Course No. 1.-South 453.3 feet on Section line between Sections 9 and 10, thence, Course No. 2.-West 93.1 feet on North side of Highway, thence, Course No. 3.-North 461.45 feet on C. F. Johnson's East side line, thence, Course No. 4.-S. 85° E. on the meander line to the place of beginning.[2]

The deed does not mention the water's edge. Because the mean-der line and the high water mark were not identical when the deed was conveyed, ownership of the beach area lakeward of the meander line is now in dispute.

At the time Church conveyed the property to Moffat, the area between the meander line and the high water mark was probably small, as the meander line was used in the government survey to approximate the lake's high water mark. Even though Lake Tahoe

---

[1] " 'Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuousities of the banks . . . and as a means of ascertaining the quantity of the land in the fraction subject to . . . .' "*Hardin v. Jordan,* 140 U.S. 371, 381 (1891) (citation omitted).

[2] The Michelsens' deed contains this same metes and bounds description.

may have receded somewhat between the time of the government survey (1861 and 1875) and the time of Church's conveyance to Mr. Moffat (1930), the State of Nevada owned the lake bed up to the old high water mark, which the meander line was used to approximate. Any existing beach area below the original high water mark was owned by Nevada.

In 1979, however, the Nevada legislature enacted a statute relocating the boundary between the bed of Lake Tahoe (owned by the state of Nevada) and land adjacent to the lake. Because Lake Tahoe had receded over the years, the legislature passed NRS 321.595, which established the boundary line of the lake bed at 6,223 feet, Lake Tahoe datum.[3] Thus, the boundary of the lake bed was moved to approximate the lake's lower water level, and the entire beach area adjacent to the Michelsens' parcel was converted to private property. Both the Michelsens and the Harveys claim ownership of this wide, sandy beach.

The district court determined that the Church/Moffat deed's use of the meander line is redundant and that the deed names but does not actually describe the location of the meander line. Specifically, the district court found that "[t]he Church/Moffat deed contains a metes and bounds description of the land conveyed and includes the property that is upland from the meander corners of the Michelsen's lot. Moffat's deed does not include land to the actual meander line." Therefore, the district court concluded that the deed does not convey land to the meander line, but instead to a line somewhere above the meander line. The district court also found that the grantor, Church, had impliedly reserved the segment of land between the meander line and the water's edge for herself. Thus, the district court determined that since the entire beach area (converted to private property in 1979) extends from the strip of land Church had impliedly reserved, the Harveys, Church's heirs, own the beach in fee simple absolute.

We disagree. When the government sells property surveyed with a meander line, the water course, and not the meander line, marks the boundary of the property. Reno Brewing Co. v. Packard, 31 Nev. 433, 103 P. 415 (1909); *see* Hardin v. Jordan, 140 U.S. 371 (1891). Because the Lake Tahoe property bought by Church was described with reference to the government survey (which established and used the meander line),[4] she acquired title

---

[3]This number refers to the 6,223 foot elevation level, as measured by the Lake Tahoe datum base elevation.

[4]Specifically, Church bought property described as "Lot numbered One (1), being the fractional North half (N½) of section Nine (9), Township Thirteen (13) North, Range Eighteen (18) East . . . containing thirty-six and 66/100 (36.66) acres, more or less, according to the United States Government survey thereof."

to the high water mark of Lake Tahoe, and not simply to the meander line.

Church conveyed a portion of this property (the parcel currently owned by the Michelsens) in a deed containing a metes and bounds description and using the meander line as its last call. In Langworthy v. Coleman, 18 Nev. 440, 444, 5 P. 65, 67 (1884), we determined the intent of a grantor by "construing the deed most favorable [sic] to the grantee, and considering the character of the property, and all the circumstances surrounding the parties." In the present case, we find that the Church/Moffat deed reflects the parties' intent. Construing the deed most favorably to the Michelsens, and considering the character of the property and relevant circumstances, we find that Church conveyed title to the high water mark of Lake Tahoe.

Because the meander line was close to the edge of Lake Tahoe when the deed was written, and because the meander line had been used by the federal government as a survey substitute for the high water mark, we find that Church intended to convey title to the high water mark. The only reason for the meander line's existence was to represent the high water mark at the time of the government survey. Even if the lake had receded by the time Church conveyed the property (1930), the "official" high water mark was still close to the meander line. As mentioned above, the state of Nevada owned whatever beach existed below the high water mark until 1979.

Under these circumstances, it would have been strange for Church to reserve impliedly a small strip of land along the edge of the lake for herself. If Church had intended to reserve title to an area of land adjacent to the high water mark, we believe she would have reserved more than the modest strip of land between the meander line and the lake bed (owned by Nevada). In addition, if Church had intended to reserve title to the strip of land, she could have done so expressly.

Although the Michelsens possess title to the beach area in fee simple absolute based on the deed conveyed by Church, the Harveys have met the requirements for a prescriptive easement and have the right to use the beach area. A prescriptive easement is created through five years of adverse, continuous, open, and peaceable use of land. Wilfon v. Hampel 1985 Trust, 105 Nev. 607, 608, 781 P.2d 769, 770 (1989) (citing Stix v. LaRue, 78 Nev. 9, 11, 368 P.2d 167, 168 (1962)). Mere use does not constitute adverse use: Adverse use occurs when the user asserts a claim of right to use the land. In addition, exclusive use is not

necessary to establish an easement by prescription. *Stix,* 78 Nev. at 14, 368 P.2d at 169.

The party claiming an easement by prescription must establish the easement by clear and convincing evidence. *Wilfon,* 105 Nev. at 608, 781 P.2d at 770. The district court below found that the Harveys have established a prescriptive easement to use the beach area.[5] Although the district court did not specifically conclude that the Harveys had established a prescriptive easement by clear and convincing evidence, we find that the record contains clear and convincing evidence of a prescriptive easement. The Harveys and their predecessors peacefully and continually used the beach area for a period of sixty years under a claim of right to do so. Church built a pier (now destroyed) from the beach area to the water. In addition, a seawall was constructed across the beach area; this seawall was built by Church and W. H. Moffat. Further, according to the Harveys, their father, Reverend John Harvey, exercised control over the beach area for more than thirty years and prohibited people from smoking tobacco and drinking alcoholic beverages on the beach. Finally, the Harveys testified that they have cleaned the beach of debris and pine cones on a yearly basis. These acts demonstrate that the Harveys' predecessors claimed a right to use, modify, and control the beach. We therefore find that the Harveys have established a prescriptive easement over the beach area and may continue using it as they have during the past sixty years.

---

[5]The district court found, and we agree, that the Harveys have not established a prescriptive easement to use the existing pier, which was built by Walter Cox, the Michelsens' predecessor. Mr Cox placed "no trespassing" signs on his pier, and the Harveys have not frequently used the pier or claimed a right to do so.