*1040
 
 OPINION
 

 Per Curiam:
 

 This case arises from a neighborhood dispute regarding water rights. Appellant, Victor Jordan (“Jordan”), filed criminal trespass charges against Respondent, Stanley Bailey (“Bailey”), after Bailey crossed Jordan’s property to perform work on an aqueduct system which services certain water rights along the Ophir Creek near Washoe Valley, Nevada. After being found not guilty in a local justice court, Bailey commenced this action in district court for malicious prosecution. Jordan counterclaimed, seeking injunctive and declaratory relief in connection with his claim that Bailey had no right to traverse Jordan’s property to maintain the system.
 

 
 *1041
 
 Following a three-day bench trial, Bailey was awarded $5,000 in general damages on the malicious prosecution claim and Jordan was denied any relief. Bailey was also awarded $10,000 in attorney’s fees for successfully defending Jordan’s counterclaim. The district court also declared the existence of three prescriptive easements crossing Jordan’s property for the following purposes: (1) a vehicular access road which cuts across the northern portion of Jordan’s tract, (2) an aqueduct consisting of a pipeline and open ditch running parallel to the access road which carries water from the diversion dam on Ophir Creek to water rights users, and (3) a footpath through Jordan’s tract leading to a “sand trap” located on an adjacent parcel south of Jordan’s property.
 

 Jordan maintains that the three routes at issue had not ripened into easements by prescription. Correspondingly, he argues that the malicious prosecution award and the award of attorney’s fees should be vacated and reversed.
 

 STATEMENT OF FACTS
 

 ■
 
 For many years, a concrete diversion structure or dam has diverted water from the Ophir Creek, southward through an aqueduct system to eight or nine holders of local water rights. This water diversion and aqueduct system is generally referred to as the “Twaddle Ditch.” In 1983, a catastrophic landslide and flood destroyed the original diversion structure. Thereafter, with federal assistance, the diversion site was relocated and the water supply re-established.
 

 The Twaddle Ditch users, including Bailey, gained access to the pre-flood diversion structure by crossing the northern edge of what became the Jordan tract in 1989. The old path to the pre-flood diversion structure was impassable by vehicle.
 

 Robert Rusk (“Rusk”), a local water rights holder, was instrumental in organizing the Twaddle Ditch users and in obtaining federal assistance to design and rebuild the new diversion structure after the 1983 landslide. The project entailed building an access road and pipeline traversing the northern portion of the Jordan tract and extending approximately 250 feet beyond his property line to the west. Rusk gave conflicting testimony as to whether the previous owner of the Jordan tract gave permission to install the pipeline and reconstruct the access road on his property.
 

 Following the 1983-84 reconstruction project, water was piped from the diversion structure across the entirety of the northern portion of the Jordan tract to an open ditch situated twenty to thirty feet to the east of Jordan’s property. The Twaddle Ditch users would access the dam, pipe and ditch via the newly constructed road.
 

 
 *1042
 
 The ditch then turns in a semi-circle around the Jordan property to the south and west to a “sand trap” located approximately 400 feet southeast of Jordan’s house. The sand trap captures and removes large accumulations of sand and decomposed granite. The water users must regularly remove accumulated debris from the sand trap to ensure that the water reaches their property. This occurs at intervals ranging from several times in one day to only once a month.
 

 When Jordan purchased the tract in 1989, he did not obtain water rights. He testified that he was not aware of the sand trap’s existence when he began construction on his barn in 1989, which he completed in 1991. Construction on his home began soon thereafter and was completed in November 1992. The house itself is located near the southeast corner of his parcel.
 

 The holders of Twaddle Ditch water rights have traditionally used four different routes to reach the sand trap. First, from a location near the Bowers’ Fire Station, they can climb in a northerly direction to the sand trap. The second route starts at the northeast border of Jordan’s tract and runs in a southerly direction through Richard Smithson’s (“Smithson”) tract which abuts Jordan’s property to the east. From there, users follow the open ditch to the sand trap. The third and subject route runs south through the Jordan property within six feet of Jordan’s house. The fourth route begins near Smithson’s residence and runs in a southerly direction to the sand trap. According to Bailey’s testimony at trial, this route is safe and convenient, but permission to use it is revocable at any time by Smithson.
 
 [1]
 

 Testimony indicated that access to the diversion structure was interrupted in June of 1985 for a period of three days when a nearby property owner installed underground electrical lines, and for a few days in June of 1987 when the bridge across Ophir Creek was washed out. Smithson testified that access to the diversion structure was also blocked for a separate period of ten days when he ran underground power to his home.
 

 Jordan testified that he personally inspected his property and researched the title to his tract before purchasing it from the federal government.
 
 [2]
 
 During his repeated visits before and after purchasing the property, prior to commencing construction, Jordan never witnessed anyone crossing his property to reach the sand trap.
 

 
 *1043
 
 During the construction of his home in 1991, Jordan first learned that water users crossed his property to access the sand trap. It was then that he encountered a neighbor walking southbound on the property. In a cordial twenty-minute conversation, the neighbor mentioned that he was going to work on “his water system.” Unaware of what this meant, Jordan indicated that, once his home was completed, foot travel near his home would no longer be allowed.
 

 Uncontroverted testimony indicates that Jordan first encountered Bailey on November 9, 1992, while working in a long and deep trench on his property. Bailey, after stopping his vehicle and introducing himself, claimed that the trench was blocking his access and that he wanted to take a route near Jordan’s house to the sand trap. Jordan advised against such a route because of the danger created by a series of open trenches on the property and, also, because he valued his privacy. As Bailey continued walking near Jordan’s house in disregard of the admonition, he informed Jordan that he had a 140-year history of water rights. At that point, Jordan called the sheriff and lodged a trespass complaint.
 

 Bailey was tried in justice court for criminal trespass on April 1, 1993. After explaining that the other routes were practically inaccessible, he was acquitted of the criminal trespass charge.
 

 Jordan built a fence in the summer of 1994 to prevent people from wandering into his yard and to keep his animals in an enclosed area. Although it did not impede foot traffic, the fence blocked vehicular access to the diversion structure on Ophir Creek. Three months after completion of the fence, Bailey filed a complaint against Jordan for malicious prosecution. Jordan counterclaimed for declaratory relief seeking an adjudication that no easements encumbered his property. He also sought injunctive relief. Bailey unsuccessfully sought a temporary restraining order to preclude Jordan from blocking access to the diversion structure with the fence.
 

 At trial, Bailey testified that the only reasonable route to the sand trap passed within several feet of Jordan’s house. Relying on an aerial photograph, Bailey referred to this path as a “white trail.” He also testified that he had used this path for many years until the “trespass incident.” Jordan maintains that a close examination of the aerial photograph reveals that the “white trail” is actually a drift of white boulders, and that no other trial witnesses described such path leading to the sand trap.
 

 Bailey testified that, at the time of the trespass incident, he was unaware of the fourth route running east of Jordan’s property near Smithson’s house to the sand trap, and stressed again that the routes from the fire station and along the open ditch are not impossible to traverse, but are “practically inaccessible.”
 

 
 *1044
 
 At the conclusion of the trial, the district court awarded Bailey judgment on all issues. Jordan appeals.
 

 DISCUSSION
 

 Standard of Review
 

 A district court’s determinations of fact will not be set aside unless they are clearly erroneous. Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 591-92 (1990). If the district court’s findings are supported by substantial evidence they will be upheld. Nelson v. Peckham Plaza Partnerships, 110 Nev. 23, 25, 866 P.2d 1138, 1139 (1994).
 

 The Three Prescriptive
 
 Easements
 
 [3]
 

 In Nevada, adverse, continuous, open and peaceable use for a five-year period are the requisite elements for claiming an easement by prescription. Stix v. La Rue, 78 Nev. 9, 11, 368 P.2d 167, 168 (1962). Exclusivity is not a requisite element.
 
 Id.
 
 at 14, 368 P.2d at 169. Adverse use is established by asserting a right to use the land. Michelsen v. Harvey, 107 Nev. 859, 863, 822 P.2d 660, 663 (1991). The standard of proof in establishing an easement by prescription is clear and convincing evidence. Wilfon v. Hampel 1985 Trust, 105 Nev. 607, 608, 781 P.2d 769, 770 (1989). Bailey argues that he and his predecessors in interest perfected the easements before Jordan acquired his property in 1989.
 

 
 *1045
 
 Bailey maintains that Twaddle Ditch users exercised their water rights from 1856 until the flood of 1983 destroyed the old diversion dam. Because the flood required the construction of a new diversion structure, access road and pipeline, Bailey was attempting to acquire easements by prescription along post-1983 routes. Bailey maintains that the Twaddle Ditch water users openly, continuously and adversely crossed the Jordan tract without interruption from 1983 until 1992, when Jordan started to block their access. Thus, the factual dispute was
 
 when
 
 and
 
 if
 
 these routes were adversely, continuously, openly and peaceably used for a five-year period.
 

 A.
 
 Adverse Use
 

 1.
 
 The route to the sand trap
 

 The most vigorously contested alleged easement is the route to the sand trap which passes within six feet of the Jordan home near the southeast corner of his property. Jordan maintains that the record below does not contain clear and convincing evidence supporting the trial court’s finding that a prescriptive easement crossing the southeastern portion of his property had been established. We agree.
 

 First, there was insufficient proof of adverse use prior to Jordan’s purchase of the property in 1989. Further, there was no visible path along the southeast corner of Jordan’s property that would provide constructive notice that an easement existed. At trial, Jordan testified that he did not see a human path near his home leading south to the sand trap. Nor did Jordan witness anyone using the “path” during the six-month redemption period following the purchase of his property. Other than his encounter with Bailey, he claims that he recalls only one other Twaddle Ditch water user crossing his property to work on the water system.
 

 Bailey does not contend that the Twaddle Ditch water users have acquired these easements by necessity. Nevertheless, his argument has such overtones, particularly when he maintains that the other methods of reaching the sand trap were practically inaccessible. In Jackson v. Nash, 109 Nev. 1202, 866 P.2d 262 (1993), we examined the problems presented by claims of easement by
 
 necessity.
 
 There we noted that:
 

 Although Jackson may prefer the more convenient road through the Nashes’ property, this preference is not sufficient for this court to impose an easement. An easement “ought not be implied merely as a matter of convenience, especially when an acceptable and practical route constituting a lesser burden on the servient estate is available.”
 

 
 *1046
 

 Jackson,
 
 109 Nev. at 1212, 866 P.2d at 269 (citation omitted). While we do not conclude that an easement by necessity was established, we believe that the reasoning in
 
 Jackson
 
 should apply by analogy to the creation of easements by prescription.
 

 Bailey testified that the other routes to the sand trap from the diversion dam, in particular, the route heading north from the Bowers’ Fire Station, involved arduous climbing and undue consumption of time. In line with
 
 Jackson,
 
 we conclude that Bailey may not bootstrap a prescriptive easement along the southeastern portion of Jordan’s property simply by claiming that, because of inconvenience, it is an integral part of the Twaddle Ditch system. This is especially true in light of the fact that there is a fourth, albeit revocable, convenient route. Bailey’s ignorance of the route does not change its existence.
 

 Accordingly, we conclude that Bailey failed to proffer clear and convincing evidence that his use of the southeastern route running within six feet of Jordan’s home was adverse. Thus, an easement by prescription was not established.
 

 2.
 
 The access road and pipeline
 

 In Chollar-Potosi Mining Co. v. Kennedy & Keating, 3 Nev. 328 (1867), this court held that an adverse use may be inferred where a claimant establishes a roadway on another’s property.
 
 Id.
 
 at 340;
 
 Wilfon,
 
 105 Nev. at 609, 781 P.2d at 770. A permissive use cannot ripen into an adverse use absent specific notice to the owner of the servient estate that such use is henceforth adverse for purposes of creating a prescriptive easement. Green v. Stansfield, 886 P.2d 117, 120-21 (Utah Ct. App. 1994).
 

 Although permission to use another’s property negates “adverse” use, we agree with Bailey that adversity was created by the existence of the roadway on the northern portion of Jordan’s property.
 
 See Chollar-Potosi,
 
 3 Nev. at 340.
 

 In addition, Rusk gave conflicting testimony as to whether the previous owner of the Jordan tract gave permission to install the new diversion works and access road across the northern section of the property. Here, the trial court was free, as the finder of fact, to accept whatever version given by Rusk was the most credible. In this determination, it was appropriate to conclude that the construction and use of the road was not obtained via permission from the prior owner. Thus, the trial court acted within its discretion when it concluded that the utilization of the northern portion of Jordan’s property was adverse.
 

 The remaining question to resolve is whether these two routes satisfy the other elements of an easement by prescription.
 

 
 *1047
 
 B.
 
 Continuous, open and peaceable use for a five-year period
 

 We are not persuaded by Bailey’s argument that Jordan would have been apprised of the existence of the water rights to the appurtenant properties had he obtained title insurance or diligently examined the records of the Nevada State Engineer. Even if Jordan had obtained title insurance and searched the records of the Nevada State Engineer, he would not have been alerted to the existence of the alleged easements because there was no record of them.
 

 Jordan argues that the several instances following the 1983 flood when the easements were inaccessible prevent the establishment of these easements by prescription. Jordan recounts that, in 1985, access to the diversion structure was blocked for a period of three days while a nearby landowner installed underground electrical lines; that in 1987 or 1988, access to the diversion structure was blocked for one week during the reconstruction of the Ophir Creek bridge; and that access was interrupted for a period of ten days when Smithson installed underground power lines. Jordan maintains that these incidents disrupted the required five years of
 
 continuous
 
 use.
 
 [4]
 
 However, no authority is cited in support of the proposition that these brief interruptions negated the requisite element of continuity for purposes of acquiring an easement by prescription.
 

 We conclude that easements by prescription were satisfactorily established with respect to the access road and the portion of the water system traversing the northern section of Jordan’s property.
 

 The Malicious Prosecution Claim
 

 The following elements must be satisfied to establish a prima facie case of malicious prosecution: (1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage. Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969).
 

 Want of probable cause is judged by an objective test as set forth by the California Supreme Court in Sheldon Appel Co. v. Albert & Oliker, 765 P.2d 498, 511 (Cal. 1989);
 
 see also
 
 Dutt v. Kemp, 111 Nev. 567, 573, 894 P.2d 354, 358 (1995). Under this test, it is for the court to decide whether a reasonable attorney
 
 *1048
 
 would have considered the prior action legally tenable — ignoring any subjective factors such as the attorney’s expertise and belief.
 
 Id.
 
 at 573-74, 894 P.2d at 358.
 

 In light of our finding that an easement by prescription did not exist as to the route running by his home from the access road to the sand trap, it follows that Jordan, at least technically, had probable cause to charge Bailey with trespass. (Our finding compels the conclusion that Bailey had no right to walk across the Jordan property near the Jordan home.) Further, even if we were to uphold the easement, the lack of any prior record of it and the fact that the easement had not been judicially recognized as of the alleged trespass incident would satisfy the probable cause requirement.
 
 [5]
 

 Under the objective standard articulated in
 
 Sheldon Appel,
 
 we hold that a reasonable attorney would have found legally tenable grounds to charge Bailey with criminal trespass. Accordingly, we conclude that the district court erred in finding that Jordan was liable for malicious prosecution of Bailey.
 

 The Award of Attorney’s Fees
 

 Jordan challenges the district court’s order awarding Bailey the sum of $10,000 in attorney’s fees in its judgment against Jordan on his counterclaim for declaratory relief.
 
 [6]
 
 Because Jordan has been given relief from one of the three easements found below, and because we conclude that no award on any claim is warranted, the fee award is vacated. This ruling is based on the fact that these parties have both failed and succeeded on principal issues in the case.
 

 CONCLUSION
 

 There was an absence of clear and convincing evidence supporting a finding that Bailey was entitled to an easement by prescription over Jordan’s property running south to the sand trap. Accordingly, we reverse the judgment entered below with regard to this easement.
 

 A different result, however, is compelled as to the two northern routes. The Twaddle Ditch water users have continuously utilized various routes to access their water rights for over 140 years.
 
 *1049
 
 After an exhaustive review of the record below we conclude that there is clear and convincing evidence establishing that the two post-flood routes which traverse the northern portion of Jordan’s tract ripened into easements by prescription. Accordingly, we affirm the ruling of the court below with respect to these two easements.
 

 In addition, for the reasons discussed above, we reverse the district court’s judgment with regard to the malicious prosecution claim, and vacate the district court’s order awarding attorney’s fees on Jordan’s counterclaim.
 

 [1]
 

 Smithson testified at trial that water users have used this route since he purchased the property in 1985 or 1986.
 

 [2]
 

 It may be inferred that Jordan did not rely on the services of a title company.
 

 [3]
 

 In its Findings of Fact, Conclusions of Law and Judgment entered January 11, 1996, the district court declared:
 

 8. Bailey has, for more than five years, utilized or traversed the Jordan property for the following Iawfifl purposes:
 

 (a) a vehicular road to access a water diversion dam jointly owned by Bailey and others, located several hundred feet west of the Jordan property and upstream of the Ophir Creek.
 

 (b) an aqueduct consisting of a pipeline and open ditch, allowing the flow of water out of the diversion dam, across a portion of the Jordan property into a concrete sand trap located on land owned by a third party, immediately adjacent to the south of the boundary line of the Jordan property.
 

 (c) a pedestrian path or trail across the Jordan property allowing Bailey access to the sand trap.
 

 9. The use of these three easements by Bailey over the Jordan property has been, for more than five years, adverse, continuous, open and peaceable.
 

 12. That Bailey’s claim of prescriptive easements in and to the above three uses of Jordan’s property is supported by clear and convincing evidence.
 

 [4]
 

 Actually, these interruptions, if significant, would only have affected the road, not the pipeline itself.
 

 [5]
 

 We make no comment on the social utility of resorting to the criminal courts in this manner, or on any of the other interactions between these parties.
 

 [6]
 

 Although permitted under NRS 18.010, no fee award was made by the district court in connection with the malicious prosecution claim.