# IN THE SUPREME COURT OF THE STATE OF NEVADA

BRADLEY R. SCHILLER,
Appellant,
vs.
FIDELITY NATIONAL TITLE
INSURANCE COMPANY, A
CALIFORNIA CORPORATION,
Respondent.

No. 72906

BRADLEY R. SCHILLER,
Appellant,
vs.
FIDELITY NATIONAL TITLE
INSURANCE COMPANY, A
CALIFORNIA CORPORATION,
Respondent.

No. 74853

FILED

JUL 1 5 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

Consolidated appeals from district court orders dismissing a complaint and denying NRCP 60(b) relief in a contract action. Ninth Judicial District Court, Douglas County; Thomas W. Gregory and Nathan Tod Young, Judges.

Appellant Bradley Schiller argues that the district court erred in (1) granting respondent Fidelity National Title Insurance Company's motion to dismiss for failure to state a claim and (2) denying Schiller's NRCP 60(b) motion for relief from the final judgment. We affirm.

*The district court did not err by dismissing Schiller's complaint*

Schiller purchased what had been represented as, and what he thought was, a lakefront home on Lake Tahoe. He later discovered that the property was not lakefront. In *Milligan-Tahoe, LLC v. Douglas County*, Docket No. 46015 (Order Affirming in Part, Reversing in Part, and Remanding, Nov. 21, 2007), *as corrected* (Feb. 25, 2008), a case to which

Schiller was not a party, we determined that, based on a dedication in the subdivision plat,[1] Douglas County owned a strip of land separating Schiller's property (among others') from the shoreline. After respondent Fidelity National Title Insurance Company denied Schiller's claim for his property's reduced value, Schiller sued Fidelity, alleging breach-of-contract and bad-faith claims based on his contention that his title insurance policy covered lakefront property. The district court dismissed the complaint, concluding that Schiller's insurance policy did not cover the alleged loss.

"This court reviews a district court's decision to dismiss a complaint pursuant to NRCP 12(b)(5) rigorously, with all alleged facts in the complaint presumed true and all inferences drawn in favor of the plaintiff." *Fitzgerald v. Mobile Billboards, LLC*, 134 Nev., Adv. Op. 30, 416 P.3d 209, 210 (2018). A complaint should not be dismissed unless "it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [him] to relief." *Id.* at 210-11 (alterations in original) (quoting *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008)). "The interpretation of an insurance policy presents a legal question, which we review de novo." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 127 Nev. 548, 553, 256 P.3d 958, 961 (2011).

Schiller's policy described the insured interest by reference to the subdivision plat:

PARCEL 1

Lots 2 and 3, in Block A, as set forth on map of LINCOLN PARK, filed for record in the office of the

---

[1]A plat is "[a] document showing the legal divisions of land by lot, street, and block number." *Plat Map*, Black's Law Dictionary (10th ed.). "Once a plat map is prepared, property descriptions are defined by referring to the map." *Id.*

 

County Recorder of Douglas County, State of Nevada, on September 7, 1921, as Document No. 305, Douglas County Nevada Records.

"Excepting any portion of the above described property lying below the 6229.00 foot level of Lake Tahoe and also excepting any artificial accretions to said land waterward of said land or natural ordinary high water or, if lake level has been artificially lowered. Excepting any portion below such elevation as may be established as the boundary by boundary line agreement with the State or by quiet title action in which the State is a party."

The subdivision plat was therefore part of the policy no less so than its text. *See Round Mountain Mining Co. v. Round Mountain Sphinx Mining Co.*, 36 Nev. 543, 558, 138 P. 71, 76 (1914) (holding that reference to a plat map in the description of a grant of land fully incorporates the plat into the grant); 1 Joyce Palomar, *Recorded plats*, Patton and Palomar on Land Titles § 119 (3d ed. 2018) ("Where a plat is incorporated by reference in a deed, the plat and the words and marks on it are as much a part of the grant or deed *and as controlling* as if those descriptive features were written on the face of the deed.") (emphasis added).

Schiller's complaint alleges that the plat shows the property (lots 2 and 3) extending to the lakeshore. He argues alternatively on appeal that the plat does not indicate at all where the actual waterline was when Schiller purchased his property. However, the meaning and effect of an unambiguous plat are questions of law, not triable issues of fact. *See City of Las Vegas v. Cliff Shadows Prof'l Plaza*, 129 Nev. 1, 7, 293 P.3d 860, 863-64 (2013) ("The interpretation of an instrument allegedly creating an easement is a question of law that we review de novo."); *accord, e.g., Kepler-*

*Fleenor v. Fremont Cty.*, 268 P.3d 1159, 1163 (Idaho 2012) ("[W]hen deciding whether a dedication occurred, plats are to be interpreted like deeds.").

The subdivision plat distinctly depicts a strip of land, designated 18 feet wide, separating lots 2 and 3 (Schiller's land) from the meander line (Lake Tahoe). *See Michelsen v. Harvey*, 107 Nev. 859, 861, 822 P.2d 660, 661 (1991) ("[A] meander line is a series of short, straight lines used to approximate the water's curved edge . . . ."). The location of the meander line relative to Schiller's land is significant: "It has frequently been held, both by the federal and state courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered, and that the waters themselves constitute the real boundary." *Hardin v. Jordan*, 140 U.S. 371, 380 (1891); *see, e.g., Michelsen*, 107 Nev. at 862-63, 822 P.2d at 662-63 (holding that reference to a meander line in a deed's property description indicates that the grantor intended to convey land abutting the actual watercourse). Because the plat indicates that Schiller's land is not bounded by the meander line, but rather by a line 18 feet landward of the meander line, Schiller's insured interest is not waterfront. *See, e.g., Christensen v. Mikell*, 476 S.E.2d 692, 694 (S.C. 1996) (title insurance company did not breach contract where the policy did not refer to the parcel at issue).

Schiller points to the additional language in the property description, "[e]xcepting any portion of [lots 2 and 3] lying below the 6229.00 foot level of Lake Tahoe," and argues that the policy therefore covers all land *above* that elevation, or is at least ambiguous. This contention is incorrect. The reference to "the above-described property" *limits* the scope of coverage *with respect to lots 2 and 3*; it does not expand coverage beyond the boundaries of lots 2 and 3. To the extent Schiller suggests that the

actual water line *could* have bounded lots 2 and 3 when Schiller purchased the policy, we conclude that there is no triable issue of fact here.

Schiller cannot rely on the actual water boundary because it "can be made a matter of record only by recording the plat or field note of . . . a survey." 1 Joyce Palomar, *Grants pursuant to United States survey—Meander lines as boundaries*, 1 Patton & Palomar on Land Titles § 117 (3d ed.). "The choice of whether or not to obtain a survey," however, "belongs to the insured"—not the insurer. *See* 1 Joyce Palomar, Title Ins. L. § 7:8 (West 2018 ed.) ("Title insurers have no duty to obtain a survey in connection with the issuance of a title insurance policy."). Schiller did not elect to commission or record any survey before purchasing the property. The 1921 plat therefore controls the policy's definition of insured interest. *See Kepler-Fleenor*, 268 P.3d at 1163 ("If a plat [is] unambiguous[ ] . . . , the plain language of the instrument controls[,]" and "extrinsic evidence . . . [is] inadmissible to contradict, vary, alter, add to, or detract from the instrument's terms."). Because neither the plat nor textual description identifies Schiller's insured interest as having a water boundary, Schiller's insured interest was not waterfront; any possible unrecorded facts to the contrary would be of no avail, for the policy's description is unambiguous.

Schiller argues that this conclusion improperly superimposes onto Schiller's insurance contract the outcome of *Milligan-Tahoe*, which this court decided after Schiller bought the policy. The subdivision plat, however, was recorded in 1921, irrevocably dedicating the challenged strip of land to the public. *Shearer v. City of Reno*, 36 Nev. 443, 447, 136 P. 705, 707 (1913); *see also Carson City v. Capital City Entm't, Inc.*, 118 Nev. 415, 421, 49 P.3d 632, 635 (2002) ("A dedication is a gift of land by the owner for an appropriate public use, such as a street."). Once recorded, the dedication

vested fee to the designated land, subject to a public easement, in Douglas County. *Milligan-Tahoe, LLC v. Douglas Cty.*, Docket No. 46015 (Order Affirming in Part, Reversing in Part, and Remanding, Nov. 21, 2007), *as corrected* (Feb. 25, 2008) (holding that the beach road was statutorily dedicated); *see Capital City Entm't*, 118 Nev. at 421, 49 P.3d at 635 ("A statutory dedication operates by way of grant, vesting in the municipality the fee for public use."); *see also* NRS 278.390 ("Title to property dedicated or accepted for streets and easements passes when the final map is recorded."). *Milligan-Tahoe* merely echoed what took lawful effect in 1921, when the plat was recorded.

We reject Schiller's other arguments. Schiller's reliance on policy exceptions to create an ambiguity as to the policy's coverage is unconvincing and unreasonable. We also reject any argument that the challenged strip of land constituted an easement—the record does not support such an interpretation. It is also of no avail that Fidelity provided a different map than the 1921 plat with Schiller's policy. The policy's reference to and incorporation of the plat is plain, and the plat is a publicly-available record. Finally, a title insurance policy does not insure against losses due to a seller's misrepresentations or a buyer's failed expectations. *See* Barlow Burke, *Title Insurance Defined*, L. Title Ins. § 2.01 (3d ed.) ("For instance, a covenant in an insured's deed may be covered, but representations by a vendor to an insured during the course of a purchase about the covenant are not."). It was Schiller's duty to confirm that the advertised land was waterfront. *See Land Baron Inv., Inc. v. Bonnie Springs Family LP*, 131 Nev. 686, 693-97, 356 P.3d 511, 517-19 (2015) (holding that a commercial buyer of real property assumed the risk of

mistake as to whether the purchased land was accessible and included water rights).

Schiller's title insurance policy was unambiguous as to what the policy insured. As plainly stated in the description of the insured interest, Schiller's policy covered no more than title to lots 2 and 3 as they were represented on the 1921 plat. And as plainly represented on the controlling 1921 plat, lots 2 and 3 did not have a water boundary. Schiller's insured interest was therefore not waterfront. The district court therefore properly dismissed Schiller's complaint, and we affirm that order. *See Fitzgerald*, 134 Nev., Adv. Op. 30, 416 P.3d at 210-11; *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 162, 252 P.3d 668, 672 (2011) ("If a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms.").

*The district court did not abuse its discretion by denying Schiller's NRCP 60(b) motion for relief from the final judgment*

Schiller argues that he is entitled to NRCP 60(b) relief due to undisclosed bias of the presiding judge. Specifically, Schiller alleges that the judge failed to disclose his marriage to a Douglas County representative who Schiller claims publicly accosted him at a community meeting in the aftermath of *Milligan-Tahoe*. The district court denied the motion as untimely and on its merits, and Schiller appealed. Without addressing the merits of Schiller's consolidated appeals, this court vacated the district court's order denying Rule 60(b) relief so a different district court judge could decide the motion in the first instance. On limited remand, the district court again denied the motion. The district court reasoned that Schiller had constructive notice of the presiding judge's marriage from the outset of the case, and that Schiller's motion was therefore untimely, regardless of its posture. The district court also concluded that there were

insufficient objective indicia of bias to conclude that the district court was actually biased against Schiller.

As written at the time relevant to this proceeding, NRCP 60(b) allowed a court to relieve a party from a final judgment when the movant shows such relief is warranted due to "(1) mistake, inadvertence, surprise, or excusable neglect; [or] (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." NRCP 60(b). Subsection c provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1) [and] (2), . . . no more than 6 months after the date of the proceeding or the date of service of written notice of entry of the judgment or order, whichever date is later." NRCP 60(c)(1). "Generally, we review a trial court's decision to grant or deny a motion to set aside a judgment under NRCP 60(b) for an abuse of discretion." *Ford v. Branch Banking & Tr. Co.*, 131 Nev. 526, 528, 353 P.3d 1200, 1202 (2015) (internal quotation marks omitted).

"[T]he Nevada Code of Judicial Conduct (NCJC) sets forth not only ethical requirements for judges, but can also provide a substantive basis for judicial disqualification." *Towbin Dodge, LLC v. Eighth Judicial Dist. Court*, 121 Nev. 251, 257, 112 P.3d 1063, 1067 (2005). "[I]f new grounds for a judge's disqualification are discovered after the time limits in NRS 1.235(1) have passed, then a party may file a motion to disqualify based on [the NCJC] *as soon as possible* after becoming aware of the new information." *Id.* at 260, 112 P.3d at 1069 (emphasis added); *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (recognizing that FRCP 60(b) allows parties to seek a judge's disqualification after entry of an order or judgment); *Draggin' Y Cattle Co. v. Addink*, 371 P.3d 970, 975

(Mont. 2016) ("[A] party may and ordinarily should raise disqualification issues discovered after an order or final judgment as a motion for relief from judgment in accordance with [Montana's equivalent of NRCP 60(b)].").

The record establishes that Schiller had constructive notice of the presiding judge's marriage from the outset of the case—the Douglas County representative and the judge had the same last name, and their marriage was a matter of public record. Because Schiller had the information he claims warrants disqualification since the beginning of the case, and because he did not seek disqualification until after the court entered a final judgment in the matter, Schiller did not move to disqualify the presiding judge "within a reasonable time," as is required by NRCP 60(b), or "as soon as possible," as is required by *Towbin Dodge*, 121 Nev. at 260, 112 P.3d at 1069. *Cf. Snyder v. Viani*, 112 Nev. 568, 572, 916 P.2d 170, 172 (1996), *as amended* (May 9, 1996) ("This court has established that if a party or his/her attorney has constructive notice of a judge's interest or relationship before a case is decided and does not object," a bias challenge on that basis is waived.); *Ainsworth v. Combined Ins. Co.*, 105 Nev. 237, 259, 774 P.2d 1003, 1019 (1989) ("We have previously held that time limitations on a challenge to a district judge's impartiality are not extended for litigants who knew or should have known the necessary facts at an earlier date."), *abrogated on other grounds by Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 705, 962 P.2d 596, 606 (1998).

We also note that disqualification is not warranted in this case given its procedural posture. An order dismissing a complaint "is subject to a rigorous standard of review on appeal," *Buzz Stew*, 124 Nev. at 227, 181 P.3d at 672 (quoting *Seput v. Lacayo*, 122 Nev. 499, 501, 134 P.3d 733, 734 (2006)), and "the need for disqualification decreases by the extent to which

the judge's rulings in the case are limited to purely legal matters," *United Farm Workers of Am., AFL-CIO v. Superior Court*, 216 Cal. Rptr. 4, 10 (Ct. App. 1985). The presiding judge had no opportunity to act as factfinder, or rule on evidentiary or other discretionary matters and its substantive rulings and conclusions were all subject to this court's independent review. This obviated any threat or doubt that the case would be decided by bias rather than merit.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying Schiller's NRCP 60(b) motion. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

cc:     Hon. Thomas W. Gregory, Nathan Tod Young, District Judges
        Debbie Leonard, Settlement Judge
        Richard L. Elmore, Chtd.
        Fidelity National Law Group/Las Vegas
        Douglas County Clerk